UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2022 JUN 15 PM 4: 24

Joram J. Aris

_____

_____

Write the full name of each plaintiff.

**22 CV 5019**

_____CV_____
(Include case number if one has been assigned)

-against-

New York Guard;
New York State Division of Military and Naval
Affairs
a/k/a DMNA;
The Adjutant General a/k/a TAG MG Raymond F. Shields, Jr.;
~~NYS Governor Kathy Hochul and the State~~ of New York a/k/a NYS

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes     ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| JORAM | J. | ARIS |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 3671 HUDSON MANOR TERRACE, Apt. # 17J | | |
|---|---|---|
| Street Address | | |

| BRONX | NY | 10463-1140 |
|---|---|---|
| County, City | State | Zip Code |

| 718-543-1971 | |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| New York Guard | | |
|---|---|---|
| Name | | |
| 330 Old Niskayuna Road | | |
| Address where defendant may be served | | |
| Latham | NY | 12110-3514 |
| County, City | State | Zip Code |

Defendant 2:

| NYS Division of Military and Naval Affairs a/k/a DMNA | | |
|---|---|---|
| Name | | |
| 330 Old Niskayuna Road | | |
| Address where defendant may be served | | |
| Latham | NY | 12110-3514 |
| County, City | State | Zip Code |

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| JORAM | J. | ARIS |
|---|---|---|
| First Name | Middle Initial | Last Name |

3671 HUDSON MANOR TERRACE, Apt. # 17J

| Street Address | | |
|---|---|---|
| BRONX | NY | 10463-1140 |
| County, City | State | Zip Code |

718-543-1971

| Telephone Number | Email Address (if available) |
|---|---|

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant **4:**    NYS Governor Kathy Hochul

| Name | | |
|---|---|---|
| NYS Capital Building | | |
| Address where defendant may be served | | |
| Albany | NY | 12224 |
| County, City | State | Zip Code |

Defendant **5:**    the STATE OF New York a/k/a NYS

| Name | | |
|---|---|---|
| NYS Capital Building | | |
| Address where defendant may be served | | |
| Albany | NY | 12224 |
| County, City | State | Zip Code |

Defendant 3:

The Adjutant General [TAG] MG Raymond F. Shields, Jr.

| Name | | |
| --- | --- | --- |
| 330 Old Niskayuna Road | | |

| Address where defendant may be served | | |
| --- | --- | --- |
| Latham | NY | 12110-3514 |
| County, City | State | Zip Code |

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:
New York Guard / Camp Smith Training Center

| Name | | |
| --- | --- | --- |
| 11 Bear Mountain Bridge Road | | |

| Address | | |
| --- | --- | --- |
| Cortlandt Manor | NY | 10567 |
| County, City | State | Zip Code |

## III.    CAUSE OF ACTION

## A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐  race: _____

☐  color: _____

☒  religion:   JEWISH _____

☐  sex: _____

☒  national origin:   ~~Dual Citizen: USA &~~ ISRAEL

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year:    1953 _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.   Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐   did not hire me

☒   terminated my employment

☒   did not promote me

☐   did not accommodate my disability

☒   provided me with terms and conditions of employment different from those of similar employees

☒   retaliated against me

☒   harassed me or created a hostile work environment

☒   other (specify): Violated the NYG's own Regulations/Directives/Requirements/Rules in order to Unfairly, inequitably, Unequally, Discriminatorily give recognition & access & perquisites & promotions to other Officers while rejecting and denying the same to Plaintiff.

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

SEE " ATTACHMENT TO IV. STATEMENT OF CLAIMS

B.   FACTS

PAGES 1-21   ANNEXED HERETO & MADE PART HEREOF

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

SEE " ATTACHMENT TO IV. STATEMENT OF CLAIM

B.   FACTS

PAGES I – II   ANNEXED HERETO & MADE PART HEREOF

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| JUNE 15, 2022 | Joram J. Aris |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| JORAM | J | ARIS |
| First Name | Middle Initial | Last Name |

3671 HUDSON MANOR TERRACE, Apt 17J
Street Address

| | | |
|---|---|---|
| BRONX | NY | 10463 - 1140 |
| County, City | State | Zip Code |

718-543-1971
Telephone Number                                     Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

EMPLOYMENT DISCRIMINATION COMPLAINT
JORAM J. ARIS
                vs                                                     C V
NEW YORK GUARD et als.

                                                     My file: EEOC.pages

Attachment to IV. STATEMENT OF CLAIM
                B. Facts

        On information and belief, the New York Guard has discriminated against this Plaintiff by unfairly and unequally treating this Plaintiff in various matters and fields because of their displeasure, negative bias, anti-semitic predilections based upon my Religion / Jewish &/or
National Origin / Israel &/or
Age [after a purported 7 year Promotion Freeze, the eradication of an OLD Directive 1305 [Promotions] with a NEW Directive 1305 [Promotions] fomented by certain, improperly "conditionally promoted" NYG HQ soldiers precluded this Plaintiff from further promotion by approximately a 6 month deficit] when a 4 Year Time In Grade was replaced with a 7 + Years Time In Grade, inclusive of (without limitation thereto):

A) Discriminating against Plaintiff by REFUSING to permit Plaintiff to take an earlier Authorized FGOC course after two (2) NYG soldiers who had seniority and been approved for FGOC when the CDR, G-6, HQ, NYG  bowed out of his FGOC slot or and CWO Karpel was told he was not authorized to take FGOC, despite having two (2) Associate Degrees, but was required to have either a B.A. degree or M.S. degree or higher.  CWO Bernard Karpel complained of not being permitted the opportunity to obtain higher instruction which resulted in him not being permitted promotion.

        The CDR [Ed...] G-6 [Communications], HQ, NYG was slated & approved to take FGOC with COL. Mark Sarro/Instructor as CDR, 12th RTI, HQ, NYG.
However, following the untimely death of his 1st wife he was scheduled to travel with his 2nd wife, on a Honeymoon, to Europe during the AT/Annual Training time frame for a prior FGOC course.
The G-6, HQ, NYG notified me and HQ, NYG that he would not participate in FGOC that specific AT.    I don't recall whether the CDR, G-6, HQ, NYG remained in the New York Guard by the end of that year.   I believe not.  An Officer of Indian descent, CPT or MAJ Sharath Babu ably stepped into the shoes of G-6, HQ, NYG and complained of being "passed over" for promotion multiple times - until he left the New York Guard.

        CWO Bernard Karpel assigned to HQ, NYG was also slated to take FGOC with COL. Mark Sarro/Instructor as CDR, 12th RTI, HQ, NYG.   Then Chief of Staff Lawrence Bishop nixed CWO Bernard Karpel from taking FGOC on the grounds that either a 4 year BA degree or 5 year BS degree was a pre-requisite to be permitted to take FGOC. CWO Bernard Karpel was so distraught & disgusted in realizing that his two (2) Associate Degrees and years of good work & efforts were not being recognized that he quit/resigned from the New York Guard.

                                                                                [1]

When those two (2) previously filled HQ/ FGOC slots were made known to have been "open", the Commander's Adjutant i.e. MAJ Florio Aguayo made clear to Plaintiff that, by Seniority: I, MAJ Joram Aris had seniority to be next in line for FGOC and that he, MAJ. Florio Aguayo, was 2nd in line, after me, for FGOC course.
We were thrilled because only 2 slots were made available to HQ personnel.

BOTH I and MAJ Aguayo were DENIED entry to take a prior FGOC - thus precluding both of us from becoming eligible for promotion to LTC and/or COL ranking. It was COL Mark Sarro, then CDR, 12th RTI who DENIED ADMITTANCE & REFUSED ENTRY to FGOC to both this Plaintiff [Jewish & Israeli born] and MAJ. Flour Aguayo [Hispanic].
The two (2) slots allocated to HQ, NYG Personnel for FGOC remained unfilled during that AT/FGOC course.
THE CONSEQUENCE?  I, MAJ. ARIS, a Jewish soldier born in Israel [with  NYG Seniority] was no longer competitive to rise in the ranks to LTC & COL.
THE CONSEQUENCE? MAJ. AGUAYO, a Hispanic soldier who served in the U.S. Marines [2nd in Seniority to me] was no longer competitive to rise in the ranks.

THIS PATTERN OF "knocking out" or "eliminating" potential competition in the higher ranks as would permit other NYG Soldiers to attain their highest potential, inclusive of COLONEL or even BG rank, limited and reduced a potential pool of BG &/ or MG soldiers in the NYG.  THIS PATTERN was repeated by the machinations of COL. MARK SARRO throughout my almost 20 years in the New York Guard.

Under the leadership of COL. Mark Sarro, CDR, 12th RTI, HQ, NYG a prior FGOC course was provided and the FGOC class was required to take an FGOC electronic test on computer screen from wherever they lived in NYS or were posted, AFTER the conclusion of the FGOC course at CSTS i.e. HQ, NYG during an AT.

Plaintiff was notified by various FGOC course members that prior FGOC course that the Federal web site which COL Mark Sarro had directed  the FGOC class to "log into" to take the electronic FGOC test was "DOWN & NO LONGER IN EFFECT" when the FGOC class members attempted to "log in".   No FGOC course participants whom Plaintiff communicated with received any credit for having taken, let alone "Passed" the Federal FGOC course.  Those NYG Soldiers were totally disgusted & demoralized.

Plaintiff did not see any of those NYG Soldiers return to the following/next AT. Those former NYG Soldiers complained they had wasted valuable weeks of work & effort and were so frustrated that they left Active Duty Status. They left the NY Guard.

THIS PATTERN of "knocking out" or "eliminating" potential competition in the higher ranks as would permit other NYG Soldiers to attain their highest potential, inclusive of COLONEL or even BG rank, limited and reduced a potential pool of BG &/ or MG soldiers in the NY Guard.  THIS PATTERN was repeated by the machinations of COL MARK SARRO throughout my almost 20 years in the New York Guard.          [2]

C V

B) Discriminating against Plaintiff by violating & contravening NYG Directive 1305 (PROMOTIONS) by permitting a minimum of three (3) other NYG Officers, who held rank of MAJOR to have their PROMOTION PACKAGES "approved for submission" by the G-2 [who himself submitted his own Promotion Package to Promotion Board(s) even through none of those NYG Officers had taken nor passed the pre-requisite FGOC courses to be eligible for promotion to LTC rank.  A "conflict of interest" by the G-2 because neither he, nor his 2 other NYG colleagues taken FGOC.

Of the above three (3) other NYG Officers, ALL WERE ASSIGNED TO HQ, NYG and in the parlance of NYG SMs, "They all drink the same Kool-Aid.  They're in. But not us."

   WHEN THIS PLAINTIFF submitted to G-2, HQ, NYG my own Promotion Package after having taken FGOC, the G-2, HQ, NYG rejected my Promotion Package and thus, I was unable to present my bona fides to a Promotion Board for "on the merits" promotion.          This was patently discriminatory and unequal treatment by the NYG.

      2 of the 3 Officers are Male Caucasians who live in Westchester County. The 3rd Officer is a Male Caucasian who lived in Connecticut. Now lives in Florida.

1st: MAJ. Chester Edwards B. Edwards, III resides in Port Chester, NY. [Westchester] To his credit, he claimed to be a U.S. Naval veteran Allegedly, MAJ. Chester B. Edwards, III came into the NYG as an Enlisted or non-Com. At some point, Chester B. Edwards, III was made an Officer and rose to COLONEL in blindingly rapid speed, albeit in violation of NYG Directives viz. PROMOTIONS. MAJ. Edwards knows "how the real military operates" and did so for himself.

2nd: MAJ. Richard Colety resides in New Rochelle, NY.  [Westchester] Although he never served in US Military or any National Guard, MAJ. Colety was either A/G-2, HQ, NYG (Personnel) or the G-2, HQ, NYG. ALL PROMOTION PACKAGES HAVE TO GO THROUGH THE G-2, HQ, NYG. MAJ. Colety authorized, permitted & allowed three (3) Promotion Packages for three (3) Majors [Edwards, Colety, Greene] to be "processed & accepted for submission to Promotion Board(s)" despite the FACT that none of the above-named officers had taken FGOC and were precluded from being promoted to the rank of LTC.

      Yet, later, this Plaintiff's submitted Promotion Package was "DENIED for submission" by the G-2, HQ, NYG even after this Plaintiff had taken & passed FGOC as Team "C"[harlie] Team Leader/FGOC.

      MAJ. Richard Colety, as A/G-2 or G-2, HQ, NYG was the "gate-keeper" for reviewing and REJECTING or ACCEPTING Promotion Packages to be forwarded to Promotion Boards for any and all NYG Soldiers. MAJ. Richard Colety took care of himself and his 2 other colleagues knowing full well that ALL THREE (3) Promotion Packages were inherently & patently defective because NONE of the three (3) Majors had taken FGOC, as required by NYG Dir. 1305 [Promotions].                                                                                    [3]

C V

3rd: MAJ. Barry Greene resided in Connecticut, and now resides in Florida.
MAJ. Barry Greene claimed he attended a Military School in Connecticut.
Although never served in US Military or any National Guard, MAJ. Greene
has "book smarts & knowledge" of "how the real military operates"
and he did so for himself.

Interestingly, AFTER the above three (3) Officers were "conditionally promoted"
from MAJ. to LTC., the former/OLD NYG Directive 1305 [Promotions]
was superseded by a NEW NYG Directive 1305 [Promotions}
that effectively cancelled/eliminated/precluded further opportunity for Promotions of
both Officers and NCOs by expanding "Time In Grade" requirements;
by making "Effective Date" of promotion the December following AT Promotion Boards
i.e. about five (5) months after ATs/Annual Training at CSTS Promotion Boards
AND by adding yet another fifteen (15) months of being in e.g. an O-6 slot.

Thus, the above three (3) Officers had collaborated formally or informally to
"lock the barn door behind us" viz. all NYS Soldiers AFTER they were "conditionally
promoted" from MAJ to LTC without having taken [or passed] the mandatorily required
FGOC course, which was/remains a pre-requisite for Promotions to LTC & COL.

THE CONSEQUENCE? Those three (3) Officers "jumped the line of seniority"
improperly and would build their NYG careers on such shaky foundations.

THE CONSEQUENCE?  Grumbling & complaining amongst senior Officers, senior
WOs, senior NCOs of this biased, unfair, unequal  treatment and many resigned,
in anger & disgust, from the  ACTIVE Duty List.  They quit!

THE CONSEQUENCE?  THIS PATTERN OF "knocking out" or "eliminating" potential
competition in the higher ranks as would permit other NYG Soldiers to attain their
highest potential, inclusive of COLONEL or even BG rank, limited and reduced a
potential pool of BG &/or MG soldiers in the NYG.

THIS PATTERN was egregiously repeated when firstly, LTC Chester B. Edwards,
III was promoted from LTC to COLONEL without having sufficient "Time In Grade" and
in violation of NYG Directive 1305 [Promotions] as COL Edwards was "aging out" less
than 15 months AFTER the "Effective Date of Promotion" being December of the year
in which Promotion was granted i.e. approximately 20 months after promotion was
granted i.e. almost 2 years after promotion was granted per the NEW NYG Dir 1305.

THIS PATTERN was egregiously repeated when secondly, LTC Richard Colety
[G-2, HQ, NYG] was promoted from LTC to COLONEL without having sufficient
"Time In Grade" and in violation of NYG Directive 1305 [Promotions].

Interestingly, only Jewish MAJ Barry Greene, who was "conditionally promoted"
to LTC Barry Greene, was not promoted to the rank of COLONEL.          [4]

C V

C) This Plaintiff was not afforded equal treatment by the New York Guard as was afforded the above three (3) Officers.  Moreover, on information and belief, COL Lou Marrero [G-4 / Logistics, HQ, NYG and COL Donald Slive [former Provost Marshall, HQ, NYG] were promoted to COLONEL, as have other Officers, without having taken FGOC.  Plaintiff merely seeks equal and fair treatment as that granted other soldiers within the New York Guard.

D) Discriminating against Plaintiff by failing to provide RECOGNITION to Plaintiff following the formal, written SUBMISSIONS by two (2) separate Commanders that Plaintiff be awarded the NYS MEDAL OF VALOR for having saved lives at risk to Plaintiff's own life at two (2) separate NYS Counties on two (2) separate dates.

Neither a NYS MOV nor any other recognition of any kind whatsoever was received by Plaintiff for the salutary efforts of Plaintiff that resulted in the saving of lives.

And yet, another NYG Officer from the Breezy Point region i.e. COL. Martin Ingraham, was awarded the NYS MOV in a public ceremony attended by Plaintiff for efforts he made following Super Storm Sandy.

Awarding the NYS MOV would have been useful & helpful for RECRUITMENT & RETENTION of NYG soldiers had Plaintiff been recognized with the Awarding of the NYS MOV in each of the aforementioned two (2) incidents.

Instead, Plaintiff received NO RECOGNITION OF ANY KIND even though MG Fergal I. Foley, NYG Commander - had submitted a Citation with his request that Plaintiff be awarded the NYS MOV for saving the life of a male operator of a burning car on the Sprain Brook Parkway, Westchester County, NY.

Instead, Plaintiff receive NO RECOGNITION OF ANY KIND even though LTC Steven Biro, CDR, SJA, HQ, NYG had submitted his request that Plaintiff be awarded the NYS MOV for saving multiple lives from a tumbling, out-of-control Ford Explore which lost the tread of its defective Firestone tire on the Long Island Expressway at the Old Country Road area in Nassau County, NY.

E) Discriminating against Plaintiff by failing to provide appropriate RECOGNITION to Plaintiff after Plaintiff took action to SAVE THE LIFE of a collapsed female Cross-Country runner i.e. Emma Risler from a Latham, NY high school in the Albany, NY area - who was not breathing, her lips had turned blue, her diaphragm was not moving; her ribs were neither elevating nor declining.
The efforts of Plaintiff resulted in the collapsed, not breathing female runner to take "a first breath" and continue breathing [though still unconscious].
The collapsed female runner was taken to a Bronx Hospital and released the next day. Plaintiff also telephoned 911 for Ambulance, which also resulted in NYS Park Rangers on horse back galloping to the Incident Site.                                        [5]

C V

F) Discriminating against Plaintiff by failing to give CREDIT FOR RECRUITMENT to Plaintiff for having brought in new New York Guard recruits.
Instead, HQ, NYG Recruitment Office personnel under COL. David Warager as CDR, Recruitment Office, HQ, NYG - gave credit to others, inclusive of a NYG Recruitment Office soldier could receive the Plaintiff's funded and NYG Assn's provided Recruitment Badge a/k/a "Oreo Cookie" in subdued and colored versions

.

Despite this failure of giving accurate and honest CREDIT and recognition to Plaintiff, which was repeatedly complained of by Plaintiff to then COL. David Warager, the CDR, Recruitment Office, HQ, NYG - and despite assurances that subsequent recruits would be credited to Plaintiff, no such crediting was given Plaintiff.

And also, no reimbursement was made to either Plaintiff nor the New York Guard Association, Inc. for the payment [by Plaintiff] and providing [by New York Guard Association, Inc.] of the Recruitment Badges awarded [both subdued & colored].

The New York Guard Association, Inc. was to have been reimbursed the cost & expense of ordering both the "subdued" & "colored" Recruitment Badges by the Recruitment Office or awarded NYG soldiers, by agreement with COL. David Warager and the President of the New York Guard Association, Inc.
COL. Warager failed to abide by this agreement, despite being reminded by Plaintiff repeatedly.   Plaintiff was taken advantage of and misled and treated as a stereotypical "Jewish banker who doesn't need to be paid back" by COL. David Warager, who subsequently was appointed CDR, NYG.


G) Discriminating against Plaintiff by FAILING TO GIVE ATTENDANCE CREDIT to Plaintiff which, on its face, precludes promotion eligibility unless75%  attendance is recorded per NYG Directive 1305 [PROMOTIONS].  Plaintiff well exceeded 95% attendance throughout my career in the New York Guard with extra-curricular work, investigations, research, meetings, drafting of reports and recommendations, etc.

Indeed, based on actual hours and days in which Plaintiff attended NYG Admin nights and Saturday drills and performing Investigations with or for the OIG, HQ, NYG at 26 Federal Plaza, NY, NY;
LOD for a new Enlisted who "held in" his feces because he was too embarrassed for not bringing his own roll of toilet paper to AT. This necessitated hospitalization & medical evacuation & medical intervention to eliminate the Enlisted's fecal matter;
LOD requiring driving hundreds of miles after an AT at CSTS to Endicott, NY because a NYG female engineer had become physically disabled at AT/Annual Training and was placed on Disability at the hospital where she was employed due to incapacity;
LOD requiring driving through multiple counties to North Shore Hospital, Nassau County for an ambulance & hospitalized stroke victim after a male NYG SM suffered a stroke the day he left CSTS after performing NYG services;
Meetings & telephone conferences to reinstitute the New York Guard Foundation, Inc. at the request of prior NYG Commanders; and                                          [6]

*C V*

Meetings & telephone conferences to reinvigorate & reconstitute the New York Guard Association, Inc. at the request of prior NYG Commanders;
and meetings with NYG soldiers and former Commanders to benefit the New York Guard through the New York Guard Association- it can be calculated that Plaintiff's ATTENDANCE CREDITS exceed 100% of the NYG Attendance requirements for Promotion(s).


H) Discriminating against Plaintiff, who was given 1-2 days' e-mail and/or telephone Notice that Plaintiff had been tasked to be INSTRUCTOR to teach BASIC LEGAL COURSE to NYG soldiers during AT-2018 - but was NEVER GIVEN the INSTRUCTOR'S CERTIFICATE acknowledging Plaintiff's service to the NYG by the former CDR, 12th RTI [COL Glen Marchi] nor succeeding CDR, 12th RTI [COL Mark Sarro]
despite multiple requests made to both COL. Glen March and COL. Mark Sarro for Plaintiff's Instructor Certificate as well as Certificates of Completion for all but one (1) NYG soldier who successfully attended & completed the BASIC LEGAL COURSE in which Plaintiff was the authorized Instructor.

Plaintiff submitted ALL the requisite Attendance Sheets and Instructor's [LTC JORAM J. ARIS's] "Passed" paperwork for all Attending Students, excepting a Judge who did not attend a few days of the BASIC LEGAL COURSE at AT - to CPT DUBIN at 12th RTI, "Bayonet Forward", CSTS.  CPT DUBIN's immediate superior officer and the CDR, 12th RTI, HQ, NYG was COL Mark Sarro.

THE CONSEQUENCE?  Excepting for one (1) NYG soldier,
none of the BASIC LEGAL COURSE completion certificates was received by the attendees.  Certainly this Plaintiff/Instructor was not given any of them.
As well, a former Upstate New York Judge who assisted me, at his request because he otherwise had nothing to do even as Acting Provost Marshall at HQ, NYG and he had attended each and every BLC Class which this Plaintiff was Instructor -
- was DENIED CREDIT by COL Mark Sarro.

A female NYG Soldier was ill and had to leave CSTS AFTER having successfully completed the course.
A male, Asian NYG Soldier had to leave CSTS AFTER having successfully completed the course in order to be present to take care of his ailing mother.
This INSTRUCTOR of BASIC LEGAL COURSE never received the pro forma CERTIFICATE OF MERIT, or similar, which would be placed into this Plaintiff's 201 [Personnel] File and/or this Plaintiff's Promotion Package.
This INSTRUCTOR of BASIC LEGAL COURSE never received the pro forma CERTIFICATES OF COMPLETION to hand out to his students from the 12th RTI which was, by then, under the command of COL MARK SARRO, who replaced COL Glen Marchi as CDR, 12th RTI for a brief term.

[7]



THE CONSEQUENCE? Even though Plaintiff put together, at almost "last minute's notice" a professional and valuable BASIC LEGAL COURSE for NY Guard Soldiers during an AT/Annual Training - on paper it would appear that LTC Joram J. Aris did nothing during said AT/Annual Training.  Not good if Plaintiff wants recognition of having provided "Added Value and Worth" as a New York Guard Officer.

THE CONSEQUENCE? Once again, such failure to document the effective and pro-active and productive efforts and work-product of Plaintiff dramatically diminishes, even eliminates, any potential competition for promotion in the ranks by Plaintiff to the rank of COL or even BG.
Such willful misconduct is discriminatory, unfair and inequitable.
Moreover, such misconduct diminishes the pool of potential Higher ranking leadership within the New York Guard and demoralizes those NYG soldiers who took and passed AT courses.


I)   Discriminating against Plaintiff in that at least two (2) of three (3) NYG Officers who were "conditionally promoted" to the rank of LTC in violation of NYG Directive 1305 (PROMOTIONS) failed to "attend the next FGOC course".

Moreover, at least two (2) of three (3) NYG Officers who were "conditionally promoted" to the rank of LTC in violation of NYG Directive 1305 (PROMOTIONS) certainly failed to PASS "the next FGOC course" by reason of  the fact that one (1) of the promoted MAJOR Officers failed to attend "the next FGOC course" of which Plaintiff was "Team Leader for Team [C]harlie" and

the second (2nd) other officer promoted from MAJOR to LTC had attended no more than 3 hours during the initial two (2) days of the FGOC course, which encompassed approximately six (6) days of Annual Training PLUS written course work submissions by all actual FGOC course attendees.


J) Discriminating against Plaintiff in that two (2) of the improperly promoted NYG Soldiers (from MAJ to LTC) in violation of NYG Directive 1305 (PROMOTIONS) were thereafter further promoted to the rank of COLONEL in violation of both the OLD/ former NYG Directive 1305 (PROMOTIONS) and the NEW/present NYG Directive 1305 (PROMOTIONS) because those two (2) NYG Soldiers were promoted from their improperly granted rank of LTC to COLONEL in violation of the "TIME IN GRADE" requirements of both the OLD/former NYG Directive 1305 (PROMOTIONS) and the NEW/present NYG Directive 1305 (PROMOTIONS).

Indeed, at least one (1) of the NYG Soldiers improperly promoted from MAJ to LTC was DENIED PROMOTION to the rank of COLONEL by a NYG Promotions Board twice (2X) on the grounds of not having sufficient Time In Grade and because he was close in time to "aging out" and other reason(s) - all in violation of the new NYG Directive 1305 (PROMOTIONS).                                                                                    [8]

*C V*

The aforesaid NYG Soldier approached the TAG and was granted promotion to COLONEL - in violation of then existing NYG Directive 1305 (PROMOTIONS). It bears pointing out that the aforesaid soldier "volunteered" himself to be "liaison officer" between HQ, NYG and DMNA, at Latham, NY - whose Superior Officer is the TAG. In other words, the aforesaid NYG Soldier ingratiated himself with the TAG prior to approaching the TAG to be promoted to the rank of COLONEL after the aforesaid NYG Soldier was DENIED PROMOTION two times (2x) by a NYG Promotions Board.

K) Discriminated against by the NY Guard by and through COL Mark Sarro, a male caucasian Westchester County resident, who was made Chief of Staff and/or Deputy Chief of Staff at HQ, NYG.

COL Mark Sarro had been CDR, 14BDE. The 14BDE deteriorated under his Command COL Mark Sarro, by his own words, was a US Ranger who operated a tank on the United States side of the Saint Lawrence Seaway and shot off a tank sabot over the St. Lawrence Seaway to watch it hit Canada and explode trees on the Canadian side of St. Lawrence Seaway. Presumptively, that caused an international incident and may have terminated COL. Sarro's US military career.
COL Mark Sarro was a Senior Officer at a FT DRUM, NY training operation and allowed pornographic/scantily clad female photo magazines to be strewn about where NYG SMs gathered - despite receiving complaints from at least 1, perhaps 2, female NYG SMs. This resulted in a Complaint being investigated by the OIG, HQ, NYG in which Plaintiff was OIC/Investigator. The failure of a Senior ranking Officer to remove those complained of magazines resulted in a "Recommendation" that such failure to act was not acceptable nor good for the morale and effectiveness of NY Guard training.

Under COL SARRO's leadership & Command, there were problems in the 14BN, 88BDE.
Under COL Sarro's Command, sufficient numbers of NYG SMs left, quit or resigned.
Under COL Sarro's Command, the 14th BDE got a bad reputation.
Under COL Sarro's Command, the 14th BDE was downgraded to 14th BN.
Under COL Sarro's Command, the 14th BN was incorporated into the 88th BDE.

COL Mark Sarro was called back to HQ, NYG after months of not physically appearing at 14BDE locales in Suffolk, Nassau, Kings, Queens, Richmond Counties. COL Mark Sarro relinquished his Command at the 14BDE which became reduced to the 14BN, 88BDE.

When Hurricane Matthew was coming up the Eastern Seaboard, HQ, NYG the Acting Commander A/CDR, NYG George DeSimone asked for a Volunteer to take Command of the 14BN, 88BDE with an incipient Hurricane Matthew approaching. All this after "Super Storm Sandy" had caused billions of dollars of  [9] damage to the NYS Counties which were under the jurisdiction of the 14BN, 88BDE.

*C V*

Plaintiff volunteered to take Command of the 14BN, 88BDE;
was vetted by the CDR of the 88BDE & accepted by HQ, NYG as CDR, 14BN, 88BDE
Plaintiff was posted as CDR, 14BN, 88BDE.
Plaintiff was advised at a CIVIL WAR FALLEN SOLDIERS CEREMONY in Queens
County, NY  by personnel from HQ, NYG [where COL Mark Sarro was now posted)
that "COL SARRO is alway bad mouthing you at Headquarters." and
"He's always talking bad of you" at HQ, NYG  at Camp Smith, New York.

COL Mark Sarro had a years long history of having earned a reputation of having
a Leadership "style" of stirring up suspicion and discord among his subordinates.
COL Mark Sarro's Leadership "style" is to keep subordinates off-kilter and never
secure in his presence.

By way of example, COL SARRO failed to back up a US Naval veteran who was
a NY Guard Instructor and wanted to eliminate two (2) NYG recruits because they were
insubordinate and wise-cracking in Class during his tenure as INSTRUCTOR for new
NYG recruits.  That US Navy veteran, in frustration and disgust, left the New York
Guard because his Commander improperly refused to back up his subordinate.
That US Naval veteran was an attorney residing in New Jersey at the time.

COL Mark Sarro had a well earned reputation of being a brooding, unsmiling,
angry looking loud mouth; a bully; an overweight, ponderous, plodding,  browbeating
tyrant of a military commander whose modus operandi was to verbally & loudly abuse
other NYG soldiers and, on at least one occasion, assault a NYG soldier.

COL. Mark Sarro always created "a hostile environment" whenever he felt or
believed or asserted that some NYG Soldier was not acting in a manner acceptable to
COL Sarro or some NYG Soldier had not done some act in a manner which was
acceptable to COL Sarro or had said something that COL Sarro did not agree with.

COL Mark Sarro's leadership style was to always keep a fellow NYG Soldier
unsure and uncertain and off-kilter, and never to feel assured by COL Mark Sarro no
matter what positive, productive work the NYG Soldier had done or said or
accomplished.

COL Mark Sarro dismissed the D/CDR, 14BN, 88BDE from Active Duty to
Reserve List without even having questioned or notified the Plaintiff, who was the CDR,
14BN, 88BDE.   That would be not only a common courtesy. It would also be
appropriate procedure.

After Plaintiff was assigned as CDR, 14BN, 88BDE - at an annual Civil War
Memorial event held at Green Point Cemetery, Queens - a JAG Officer from HQ, NYG
notified Plaintiff that "COL SARRO is alway bad mouthing you at Headquarters." and
"He's always talking bad of you" at HQ, NYG  at Camp Smith, New York.

[10]

C V

That JAG Officer gave AT/Annual Training "Safety Briefs" with slides. This Plaintiff, as SJA, HQ, NYG / JAG Officer gave AT/Annual Training briefs on "Sexual Harassment & Sexual Assault" as a PPP/Power Point Presentation

Plaintiff, as SJA, HQ, NYG / JAG Officer also was tasked to INSTRUCT & CERTIFY to U.S. military and/or NYANG troops being deployed to Iraq or Afghanistan on "The Laws Of War" e.g. Geneva Conventions & Hague Treaties, because the troops needed Certification of being so instructed prior to deployment abroad.

I was the CDR, SJA, HQ, NYG at the time. I taught a few hundred soldiers at Chow Hall and was roundly lauded by US Military and/or NYANG troops for taking the time to pay attention to the troops.
No acknowledgment of this "service" is in my 201 File, I'm certain.

At all Commanders' Conferences held at HQ, NYG in which Plaintiff was a participant as CDR, SJA, HQ, NYG or as A/CDR, SJA, HQ, NYG
COL Mark Sarro always derided and denigrated COL Allen Hershman, the CDR, 244th Medical Detachment, HQ, NYG.
COL Allen Hershman is a Jew.

A now deceased and former retired from a 30 year US Army career/ COLONEL William "Ziggy" Bernfeld [an accomplished Certified Professional Accountant/CPA] was my initial Trainer at the NYG.
COL Mark Sarro so bad-mouthed & verbally abused COL William Bernfeld that he formally complained of such misconduct and left the New York Guard, in frustration & disgust.
COL William "Ziggy" Bernfeld is a Jew.
COL Bernfeld left the NYG to give of his expertise and service Stewart Air Base, NY and the Civil Air Patrol of New York and Delaware - where he was not maltreated by Anti-semitic biased individuals - unlike his experience in the NYG through COL Sarro.

When Plaintiff was called back by the new CDR, NYG BG David Warager [after multiple Acting NYG Commanders] to HQ, NYG to take a Post with an Officer from the newly reconstituted 65th BDE [whom I had become well acquainted with], upon my arrival at CSTS. On my recall from 14DET, 88AC to HQ, NYG as Special Operations Officer, I received a surprise. Unexpectedly COL Mark Sarro notified Plaintiff that Plaintiff was to do unspecified duties under COL Mark Sarro.
The CDR, 65th BDE had been re-assigned, as well, as had I.
NOTICE THE PATTERN? Two (2) Officers unexpectedly "re-assigned" at the behest of COL Mark Sarro. His "Leadership" style of keeping subordinates "off kilter".

COL. Mark Sarro had already created "a hostile work environment" over almost 20 years' time and this made it stressful & uncomfortable for Plaintiff to continue working within the New York Guard under the Command of COL Mark Sarro.
COL Sarro always had something negative to say or raise and his leadership methodology was something I would not countenance                    [11]

C V

i.e. bellowing in a soldier's face in public; berating a soldier in front of his fellow soldiers; causing embarrassment and humiliation to said soldier in public among his peers; placing his big hands on a soldier's uniformed body and even, on at least one occasion, assaulting a New York Guard soldier [who was a new recruit, to boot!] at Chow Hall regarding a non-removed black reflective square on a service uniform.

M) When I was the JAG assigned to the OIG as Assistant IG, HQ, NYG I investigated, drafted, typed & completed approximately 95% of the OIG, HQ, NYG REPORTS & RECOMMENDATIONS. The only written input to ALL OF MY REPORTS by the CDR, IG, HQ, NYG was a cover page stating, in sum & substance: "I CONCUR" s/Acting CDR, IG, NYG.

The prior G-2 [Personnel] COL Frank Bucci promoted a fellow Italian & Catholic MAJ Robert Basso as CDR, IG, HQ, NYG. Ask anyone at HQ, NYG and they'll tell you that AFTER I LEFT the OIG, HQ, NYG the OIG, HQ, NYG always took "forever and a day" to investigate, draft Reports and submit them for the NYG Commander's Review. MONTHS!!!

i.e. without my time, energy, effort and results - the OIG, HQ, NYG lost its efficiency and efficacy and timeliness of REPORTS being submitted to the Commander, NYG. Again, I was DISCRIMINATED against by not being granted the RECOGNITION commensurate not only with my past efforts but, more importantly, with my past work product by COL Frank Bucci, the former CDR, G-2, HQ, NYG. Both COL Frank Bucci and then CPT Robert Basso are of Italian descent and they socialized very well together.

COL Frank Bucci "bent the rules" followed by the New York Guard's G-2 regarding Promotions on more than one occasion. I was tasked by LTC Francisco "Frank" Gonzalez, CDR, OIG, HQ, NYG to investigate a female NYG soldier who was promoted to Officer rank in total violation of then existing New York Guard pre-requisites for Promotions. At the same time, said female NYG soldier "held up" other NYG Service Members' Promotions paperwork. COL. Frank Bucci was well aware of this, but promoted said NYG SM anyway. I investigated for the OIG, HQ, NYG this failure of proper compliance with NYG Directives and leadership.

N) When I was initially assigned to the OIG, HQ, NYG its Commander was COL Barry Conroy of Rockland County. I thrived under COL Barry Conroy and we met at the Pomona Diner in Rockland County each month in addition to ADMIN NIGHTS and SATURDAY DRILLS Also, I did OIG investigations. My colleague and equal ranking officer at the OIG, HQ, NYG was an Italian descent officer whom I worked well with. After COL Barry Conroy "aged out" and retired to Florida, the new IG at HQ was. [12]

*C V*

LTC Francisco "Frank" Gonzalez who worked as a USPS Inspector and carried a pistol for his job.  LTC. Gonzalez, a Hispanic, brought in requisite "new recruits" and sought promotion to Colonel.  He was rejected promotion to Colonel, on information & belief.
LTC. Gonzalez left the New York Guard after a few years as my Commander at OIG, HQ, NYG complaining that "I do more work, as a volunteer, in the New York Guard than I do for my paid job!"
LTC Francisco "Frank" Gonzalez was a US Military Veteran who performed military parachute jumps into war zones and was active in the US Military during the Cuban nuclear missile crisis.  That Hispanic was denied promotion in the New York Guard.

O) After LTC. Francisco "Frank" Gonzalez departed from the OIG, HQ, NYG the G-2, COL. Frank Bucci notified this Plaintiff and my colleague that "One of you two is going to be appointed CDR, OIG, HQ, NYG.  I'll make the recommendation."
COL. Frank Bucci is of Italian descent.
My colleague, then MAJ. Robert Basso is of Italian descent.
MAJ. Robert Basso was appointed as CDR, OIG, HQ, NYG.
In hindsight, I cannot say that MAJ. Basso performed equal to nor beyond me at the OIG, HQ, NYG. AFTER I left OIG to become CDR, SJA, HQ, NYG I was told to not assist the OIG, HQ, NYG with its work.  As a result, I heard complaints that OIG investigations were taking extra-ordinarily long months of time to complete.

P) I recall that, after a few years of my being assigned to the Post of JA Assigned to OIG, HQ, NYG and simultaneously filling in for the non-existent JAG at HQ, NYG as "Acting" SJA, HQ, NYG - I had been called in, on a regular basis to Commanders' Conferences.  I was invited by then Chief of Staff, HQ, NYG - COL Lawrence Bishop to march in an upcoming ST PATRICK'S DAY PARADE.  I responded, with gratitude, for the invitation and requested permission "to ask any NYG soldier who wished to participate to march, in uniform, in the next upcoming Israel Day Parade."
Everyone around the Commanders' Conference table was silent and we moved on to the next Item on the Agenda.   At that time, I rationalized that "They may not have even been able to understand what I was even requesting permission for."
i.e. volunteer NYG soldiers to march in the next Israel Day Parade.

        But, as the years progressed and I noted that regular ADMIN NIGHTS &/or SATURDAY DRILLS & Summer Annual Trainings were being held on Yom Kippur [highest Holy day on the Jewish Calendar] and other Jewish Holydays and seeing how certain types/Class of soldiers were not being recognized
i.e. Indian, Caribbean, alleged LGBTQ, Black, Puerto Rican, Hispanic, NYG Soldiers who DO NOT LIVE ALONG THE HUDSON VALLEY i.e. Westchester, Rockland, Putnam Counties and those from DMNA/NYS government workers- I've come to the sad conclusion of discriminatory action against others and myself.
They've certainly complained to me how demoralized they were.
Yet, like me, they were not quitters.

[13]

C V

In military jargon, as we saw others being promoted, the scuttlebutt was:
"We don't drink from the same Kool-Aid as those guys!"
i.e. Leadership that self-promoted themselves or affirmatively took action FOR
THEMSELVES ALONE to self-promote - which was accepted and acted upon by
the New York Guard leadership &/or DMNA Leadership.


Q) A mere few years before I "aged out" of the New York Guard, an employee of New
York State came to HQ, NYG. He may have been an employee of the NYS DMNA
i.e. Division of Military and Naval Affairs.  His name was Edward Keyrouze.
I believe he entered the New York Guard with the rank of MAJOR [not LT or CPT]
Very quickly he was promoted to LTC, on information and belief.
Even more quickly, he was promoted to the rank of COLONEL.
Ultimately, COL. Keyrouze was assigned as Chief of Staff, HQ, NYGuard.
I have nothing personally against COL Keyrouze. We got along well. I offered my
assistance to him whenever or if ever he wanted it of me.

In all events, his meteoric rise in the ranks violated existing NYG Dir. 1305
[PROMOTIONS] for Time In Grade and other parameters.


After the January 6, 2020 Incident outside the Nation's Capital, "The Proud
Boys" was cited, negatively, as a group involved in that Incident.
As it happened, it is alleged that COL Keyrouze had joined and been a member of
"The Proud Boys" and had donated money to "The Proud Boys".
Said COL Edward Keyrouze was, allegedly, offered the option of RESIGNING from the
New  York Guard or being DISMISSED from the New York Guard.
I believe he resigned his Post and left the New York Guard.
An article at gothamist.com by George Joseph, published Oct 4, 2021


R) Chester B. Edwards, III is one of the NYG Soldiers whom I've previously referred to.
Chester Edwards, I am told, enlisted into the New York Guard as an Enlisted or Non-
Com.   He was accepted into the New York Guard as a Non-Officer.
Yet, somehow, the same soldier was re-appointed as an Officer [which rank, LT or CPT
I don't know].   I believe COL Edwards was a CPT as the same time as myself.


I was promoted to the rank of MAJOR based upon my work performance &
results by then Commanding General David Lax i.e. MG David Lax, CDR, NYG.
I was promoted from CPT to MAJ in the New York Guard based on MERITOCRACY.
i.e. for certain extra-ordinary work & services I performed during Annual Training for the
New York Guard soliders.  I was an INSTRUCTOR of Counterterrorism during AT.


[14]

C V

The aforedescribed NYG Soldier and two (2) other NYG Soldiers were promoted from the rank of Captain to the rank of Major approximately 1 year after me.
YET, in violation of NYG Directives, those 3 NYG Soldiers were allowed to submit their respective Promotion Packages to the G-2 & Promotion Boards and were "conditionally promoted" to the rank of LTC without having taken nor passed the pre-requisite FGOC course, as mandated by NYG Dir 1305 (PROMOTIONS).
Thereafter, 2 of 3 of said NYG Soldiers were now promoted to COLONEL in violation of NYG Dir 1305 (PROMOTIONS) viz. Time In Grade; Retirement status and the like.

It should be added that, allegedly, all three (3) of the aforedescribed NYG Officers were at HQ, NYG at CSTS /Camp Smith Training Site and held positions that allowed THEM to provide substantive input for drafting NEW New York Guard Directives.  One result was the replacement of the OLD NYG DIR 1305 (4 years Time In Grade) to the NEW NYG DIR 1305 (7 years Time In Grade + December Eff. Date + 15 additional months in an O-6 slot, for example.
NB: I held an O-6 slot as CDR, SJA, HQ, NYG when I was a CPT & MAJ.

One of the changes was that the prerequisite "TIME IN GRADE" was changed from 4 years to 7 years.

Another of the changes was that under the OLD DIR. 1305 - any promotion by a Promotions Board took effect the month the Promotions Board granted a promotion. But the NEW DIR. 1305 mandated that any Promotions Board granted promotion [typically during a Summer/June, July, August AT Annual Training] would "Take effect in December of that year."  i.e. about 6 months after promotion granted.

Another of the changes was that a pre-requisite to promotion to e.g. COLONEL, the LTC would have to be in an O-6 slot.

This new NYG DIR 1305 came into effect AFTER THOSE THREE (3) OFFICERS WERE IMPROPERLY PROMOTED from MAJ to LTC in violation of the OLD NYG DIR 1305 (PROMOTIONS).
In actual effect, those three (3) Officers self promoted themselves AND SHUT THE BARN DOOR BEHIND THEM TO PRECLUDE COMPETITION FOR THE RANK OF COLONEL, which they all sought.  Very self-serving of them all.

As it happens, again, in violation of the NEW NYG DIR 1305, two (2) of the three (3) newly minted LTC Officers were promoted to COLONEL in violation of the NEW NYG DIR 1305 (PROMOTIONS) as they did not have sufficient TIME IN GRADE and the NYG Soldier who approached the NYS DMNA TAG to obtain his promotion to COLONEL was additionally ineligible because he was "aging out" at age 68.

This Plaintiff respectfully demands equal treatment by the NYG, the TAG, and NYS.                                                                                          [15]

C V

I should have been and should still be promoted to COLONEL based on meritocracy, my work product, my positive OERs, my "added value" to the New York Guard, my documented history of saving lives, etc. Additionally, at the behest of the former Commanders of the New York Guard, I reconstituted the New York Guard Foundation, Inc. and re-established the working of the New York Guard Association, Inc.

S) I was DISCRIMINATED against because, even as I successfully maintained myself within the Mandatory Heights & Weight Standards of the New York Guard, COL Mark Sarro always and consistently and forever was allowed to remain as an "Active" List NYG Soldier despite his morbid obesity, his clear actual "unfit for physical duty" countenance, demeanor, waddling gait and possibly other medical problems.

Indeed, a NYG Soldier of Polish descent [I believe he was from the 56th BDE] and I were both prepared to TAKE AND PASS the PHYSICAL FITNESS TEST to obtain our White ribbon/Physical Fitness Award during Annual Training.
Such PHYSICAL FITNESS TEST must be supervised & verified by a NYANG soldier i.e. not a NYG Soldier.  Despite our having trained for this PHYSICAL FITNESS TEST, the proposed & promoted Test was CANCELLED and neither I nor the Polish NYG soldier were granted the opportunity to prove ourselves capable of passing the rigorous PHYSICAL FITNESS TEST.  That was demoralizing and discriminatory.
WE WERE DENIED THE OPPORTUNITY TO TAKE THE TEST because others were afraid that WE WOULD LOOK GOOD and perhaps other NYG Soldiers would look not as capable or competent or "physically fit for duty & service".

From my perspective, it would only have been a POSITIVE BENEFIT to the New York Guard and to NYG SMs to see that one of its own known, a well liked and respected Officer i.e. myself - had taken the time and made the effort to become sufficiently physically fit as to "Take & Pass" the NYS Military Fitness Award challenge, which can only be certified as "Successfully Accomplished" by a NYANG soldier. i.e. Not a "friend" within the ranks of the New York Guard.

Both I and that Polish descent NYG SM were denied the opportunity to shine, which is a shame grounded upon discriminatory practice by NYG Leadership.
Such efforts to minimize the capabilities & determination of US Citizens of foreign national descent does no benefit to the New York Guard. It diminishes its members and demoralizes their attempts to "make the extra effort" for the greater good.

T) In the first 15-16 years I was on Active Duty in the New York Guard, I came to know a small group of female New York Guard soldiers.  Two (2) assigned to the G-2 under COL. Frank Bucci gave so much of themselves.  Yet, they both left the New York Guard.   A third female New York Guard soldier came in and was tasked to research the History of the New York Guard with a Colonel at HQ, NYG. Her husband was a musician.
Said female NYG Soldier left the New York Guard after less than five (5) years. [16]

C V

She was stymied by an apparent lack of cooperation from the male soldiers in the New York Guard. I was willing to "take up the reins" and publish a 100 Year Anniversary book/pamphlet of the New York Guard. I was given repeated assurances that my proposed project was "approved" by two (2) Commanders, New York Guard. But, in reality, there was no follow-up and backing of that "approved" status for this project. I had already put in $2,000.00 into a separate bank account in order to have Monthly Fees waived. That $2,000.00 was totally lost with no results realize.
It seems that had such a publication been created, it was unacceptable to Leadership. Neither from a female nor a foreign born United States citizen who is a Jew.

A fourth (4th) female New York Guard soldier assigned to the 244th Medical Clinic, drove in from out-of-State and came from a Military Family. She was offended that, after over a decade of military service, when a Command opening arose in the 244th Medical Clinic, that Commander's slot was given to a new NYG recruit.
She was totally demoralized as a result. Scuttlebut had it that said female NYG soldier was "overlooked" because of her sexuality.

A fifth female New York Guard soldier, assigned to the 56th BDE provided yeoman's services for over ten (10) years.
It is that female NYG Soldier's astute & perceptive observation [which she conveyed to me] that resulted in my making written/e-mail inquiry of a proposed "transfer of used military uniforms & equipment & who knows what" to the New York Guard on a trailer parked within the grounds of a Veterans Administration Hospital in Kingsbridge, Bronx, NY.   When I sought the provenance of the CONTENTS & SOURCE of those "used military uniforms & equipment & who knows what" because I wanted to rule out possible contamination by medical radioactive isotopes or otherwise and I wanted to know the condition of the proffered "used military uniforms & equipment & who knows what" e.g. were they covered with mold, paint, torn & ripped, usable? -
I never received an answer from the Transferor and the entire potential debacle was averted.

MAJ / LTC Chester B. Edwards had proposed bringing the entire trailer onto Camp Smith Training Site and storing its contents in the Basement of Building 503. After weeks of looking into this undocumented, non-provenance, uninspected "gift horse" and personally being involved the last 2 weeks of this unrealized debacle, the entire potentially radioactive/moldy/decomposing "gift" of uninspected garbage collapsed as a fiasco.   Yet, that female NYG Soldier was not given RECOGNITION for her services and has aged out.


U) Prior to my volunteering [as requested by A/CDR, NYG George DeSimone to take Command of the 14BN, 88BDE when Hurricane Matthew was coming up the Eastern Seaboard to Long Island & NYC - a COL [Farley?] from Albany, NY was posted as CDR, SJA, HQ, NYG. He had hoped to be appointed as CDR, NYG. He was not. He failed to physically appear or attend at HQ, NYG for months.I was the de facto SJA, HQ, NYG. Even though I had held that post previously, I was not given it again.    [17]



V) In 2018 Plaintiff, in my capacity as President of a Not-For-Profit Corporation, I drafted and e-mailed my proposed Legislation to benefit all Active Duty, Reserve List and Retireds List members of the New York Guard to:
1)   Members of the NYS Assembly Veterans Affairs Committee and my local NYS Assemblyman and
2)   Members of the NYS Senate Veterans, Homeland Security and Military Affairs Committee and my local NYS Senator.

The Office of NYS Senator Leroy Comrie and Mr. Chris LaBarge [chris@LeroyComrie.org] represented enthusiasm & support for my proposed Legislation.  Said Legislation would have resulted in positive assistance to Active Duty members of the New York Guard; would have assisted in Recruitment & Retention incentives for new recruits & active duty recruits; would assist Active Duty NYG SMs perform their duties and services more efficiently and effectively;
and would provide other benefits to Active, Reserve Retireds of the New York Guard.

        Additionally, while much of the proposed Legislation would not cost the State of New York any money, other parts of the proposed Legislation would be financed from penalties obtained by the State Of New York from past and future entities who paid NYS fines and penalties e.g. Tobacco companies; Volkswagen diesel engine fraud case; multiple Bank fraud cases during the 2008-2009 Mortgage Foreclosure Crisis involving "Robo-signers" on Mortgage instruments; etc.

        Plaintiff respectfully urges and demands that all and/or parts of said proposed Legislation be actively reviewed, submitted for a vote and voted upon by the NYS Legislative bodies - which would benefit the State of New York and its inhabitants.


W) Penultimately, after a life-time of doing good work and doing good deeds and being a good Samaritan to many people over my lifetime, from Elementary School and to date
e.g. elected Class President in Elementary school and Junior High School;
elected Student Body President;
elected Chairman &/or President of various entities in the USA and England;
Elected Elementary School Parents Association Executive Board Member;
Elected Middle School PA Executive Board Member;
Elected President of a Tenants' Association;
Appointed Community Board # 8 member for 4 or 6 years;
Appointed NYC DOT "Adopt A Highway" volunteer for 27 years;
Sworn into New York Guard as a volunteer who provided about 18 years service
-  I have paid a very steep price - emotionally, mentally, physically, professionally because I gave so much of myself and "did my duty(ies)" in the New York Guard.

[18]

C V

Because I/Plaintiff took time out to be a participant in multiple [and a specific] Commanders Conference at HQ, NYG I missed a deadline to serve & file a Verified Answer to a lawsuit commenced by a former client whom I successfully obtained a $300,000.00 Settlement Offer for.

Said former client had been sued by his own Mother and Brother in a Partition Action to effectively dispossess him of any return from being a Joint Owner of realty in Bronxville, Westchester County, NY.   I was unaware I was his 3rd attorney.
The prior 2 attorneys obtained $0.00 for my former client.
After my former client's mother died, I obtained a written $300,000.00 Settlement offer. The surviving brother offered $300,000.00, as I expected, to rid himself of my client.
After review with my then client, he was thrilled and Executed both a General Release for $300,000.00 and added his signature to my Attorney's executed Stipulation of Settlement to be filed in Supreme Court of NYS: Westchester County.

I was thereafter verbally terminated by my former Client, as he assumed he would receive a $300,000.00 check from his brother and not have to pay me a lawyer's fee.  My former client, with his 4th attorney, successfully acted to preclude me from a fee despite a few years of successfully representing my former client.

Unfortunately, the $300,000.00 Settlement Offer made to me & accepted by my former client and me, in writing, could not be effectuated in the pending Partition Action in Supreme Court of NYS: Westchester County due to the mother's death.
The $300,000.00 Settlement Offer would have to be counter-signed by a Surrogate's Court appointed Executor of the Estate of the now deceased Mother.
This caused my former client enormous distress as he was unemployed during the approximately 2 & 1/2 years I represented him without pay.
Moreover, my former client refused to sign an updated Retainer Agreement to permit me to represent him/his interests in Surrogate's Court of NYS: Westchester County. Again, I had not been paid by my client throughout my having successfully representing him/his interests in Supreme Court of NYS: Westchester County on the Partition Action through the time of his Mother's death [she was a Plaintiff suing her son / my former client].

My former client retained a 4th attorney who sued me for, inter alia, "failing to properly represent my former client." The lie to that is that false allegation is that a the 4th attorney alone represented my former client in Surrogate's Court: Westchester County and, after about 1 & 1/2 years, settled in Surrogate's Court: Westchester County for $100,000.00 LESS than the written Offer of $300,000.00 that I and my client accepted in writing.
i.e. The 4th attorney settled for $200,000.00 with my former client.
I had no involvement in Surrogates Court: Westchester County
I had no involvement in settling for $100,000.00 LESS than the $300,000.00 Offered to me and agreed to as a Settlement sum of $300,000.00 by my former client,      [18]

C V

who executed a General Release for $300,000.00 and added his signature to the Stipulation of Settlement signed by me & my former client to be filed with the Supreme Court of NYS: Westchester County.

My former client and his 4th attorney sued me on grounds I had never even been aware existed.   I had insufficient time to research the grounds laid against me so that I might understand the charges alleged against me and Admit, Deny or DKI as to each and every allegations/paragraph in the Complaint as required.

Even though I did serve and file my Verified Answer, it was rejected by the 4th attorney.

I moved for an Extension of Time with the Court and was denied unless I moved by Order To Show Cause.

Consequently, in compliance with that Supreme Court Justice's Decision & Order, I drafted and served an Order To Show Cause for an Extension of Time to serve and file an Answer nuns pro tunc and was denied again.
Inter alia, I claimed that I should have been granted an Extension of Time at least for the days I was involved in military service to the New York Guard, as permitted by NYSSSRA and USERRA.
It is common practice & custom and the law to not harm a serving member of the military while he is performing military service.  Nonetheless, I was DENIED an extension of time, nuns pro tunc, even though my Answer had already been served and filed with the Court.

Consequently, LIABILITY was found against me.  I was DENIED the opportunity to defend myself "on the merits" because a Default Judgment was entered against me. After a 10 day trial before a Jury limited to alleged damages of my former client, a money judgment was entered against me.   Thereafter, I lost my license as a NYS attorney.

Because I knew that nothing I did caused any economic damage to my former client, my mental, emotional and physical health deteriorated and was damaged dramatically.
AFTER a Judgment was entered against me, the attorney for the now deceased Mother and the still living Brother of my former client, e-mailed my attorney to tell them, inter alia, in sum & substance that:
"Nothing Mr. Aris did caused any economic loss or damages to his former client."
"This witch hunt against Mr. Aris must end!"

Additionally, as a formerly self-employed solo attorney, my time and energy was so preoccupied by my military service within the New York Guard that it negatively affected my income earning and income receiving capabilities - which damaged me economically.

[19]

C V

By reason of the above, I respectfully make demand for $10,000,000.00 judgment against the Defendants, jointly &/or severally and, as well, that the money judgment entered against me, with interest and costs, be paid for and satisfied by the Defendants, jointly &/or severally or, alternatively, that the money judgment entered against me be dismissed and stricken with prejudice based on the fact that NOT I, but the 4th attorney who represented my former client in Surrogate's Court of NYS: Westchester County for approximately 1 & 1/2 years [I never appeared nor represented my former client in Surrogate's Court of NYS in Westchester County] -
- settled for $100,000.00 LESS i.e. settled for $200,000.00 rather than the $300,000.00 I and my client settled for, in writing. Thus, all losses sustained by my former client WERE NOT A RESULT OF ANY ACTION OR LACK OF ACTION OR CONDUCT BY ME.

Even the attorney for my former client's brother e-mailed to my former attorneys on this lost case that, in sum & substance:
"Nothing Mr. Aris did caused any economic loss or damages to his former client.
"This witch hunt against Mr. Aris must end!"

As a direct consequence of actions taken by my former [and always non-paying] client and/or his 4th attorney, what resulted therefrom was that I lost my New York Bar license and I was damaged emotionally, mentally and physically.

Allegedly, that 4th attorney, Jonathan Rice, Esq., has a reputation for suing attorneys AND socially associates with various Justices of the Supreme Court of the State of New York: County of Westchester, inclusive of the Justice who consistently ruled against me and DENIED me the opportunity to serve and file my Verified Answer nunc pro tunc by Motion & by Order to Show Cause and further ruled against me/ my attorneys at trial. That Supreme Court Justice has retired, following my trial, on information and belief.

VI. RELIEFS :   Wherefore, I respectfully make demand for the various reliefs demanded herein, inclusive of, without limitation:

A)  Promotion to rank of COLONEL;

B)  Approval/Receipt of 2 NYS Medals Of Valor submitted by the former CDR, NYG i.e. MG Fergal I. Foley and the former CDR, SJA, HQ, NYG i.e. LTC Steven Biro;

C)  Promotion & Submitting & Approving the proposed Legislation drafted by Plaintiff and e-mailed to NYS Assemblymen and NYS Assemblywomen & NYS Senators in 2018 to benefit NY Guard effectiveness, recruitment & retention;

D)  Ten Million [$10,000,000.00] Dollars money judgment with interest, court costs, fees disbursements and out of pocket costs incurred by Plaintiff;

[20]

C V

E)  Dismissal of and Striking Out the Money Judgment obtained by my former client against me because I was twice DENIED an Extension of Time to serve and file an Answer nunc pro tunc and was DENIED the opportunity to defend myself on the merits in a court of law and I was DENIED time credit for NYG military service as mandated by NYSSSRA and USERRA to extend time to Serve & File my Answer;

F)  Reinstatement of this Plaintiff to the New York Bar; and

G)  for the costs and disbursements incurred in the promulgation of this action;

H)  and for such other and further reliefs as the Court deems just.

JUNE  15, 2022                   Joram J. Aris [21]

                                              my file: EEOC.pages

EMPLOYMENT DISCRIMINATION COMPLAINT                    *C V*
— — — — — — — — — — — — — — — — —
JORAM J. ARIS
          vs
NEW YORK GUARD et als.
— — — — — — — — — — — — — — — —
Attachment to IV. STATEMENT OF CLAIM
                    B. Facts

"As additional support for your claim, you <u>MAY</u> attach any charge of discrimination"
"that you filed with the U.S. Equal Employment Opportunity Commission, "
"the New York State Division of Human Rights,          "
"the New York City Commission on Human Rights,  "
"or any other government agency.                    "

[EMPHASIS ADDED for the work "<u>MAY</u>", above.

          Because the word "…may…" is pre-printed on the USSDNY Complaint form
and the word "…may…" denotes possibility as opposed to mandatory,
I decline at this point in time from attaching all the documents heretofore filed by
Plaintiff because they are voluminous.  I reserve the right to do so hereafter.

          Moreover, the Plaintiff/New York Guard has in its possession the ORIGINAL
Complaint documents served upon the Office Of Inspector General, HQ, NYG
as addressed to the CDR, IG, OIG, HQ, NYG.
That official Complaint by then LTC Joram J. Aris, assigned to HQ, NYG at CSTS
encompasses an initial formal written Complaint to the OIG, HQ, NYG
and a subsequent service of additional documentation to corroborate Plaintiff's
Complaint {without limitation to the below} viz.:

A)  07 SEPTEMBER 2010 Recommendation for New York State Medal Of Valor
                         be awarded to:
                         MAJ Joram J. Aris
          From: MG Fergal I. Foley, CDR, NYG
                    with Citation annexed
          Incident Site: Sprain Brook Parkway, Yonkers, NY
"Without concern for his own safety, MAJ Aris saved the life of a man trapped in"
"a burning vehicle where the electric door locks and windows failed."

B)  09 AUGUST 2011 Recommendation for New York State Medal for Valor [sic]
          or New York State Military Commendation Medal be awarded to:
                    MAJ Joram J. Aris, D/SJA, HQ, NYG
          From: Steven G. M. Biro, LTC   SJA, HQ, NYG
          Incident Site: Long Island Expressway, Old Westbury, NY [Long Island]

                              I                    My file: EEOC.pages

C) 06 MARCH 2019  COMPLAINT filed by Plaintiff to the Office of Inspector General,
            Camp Smith, Cortlandt Manor, NY                    *C V*
        THRU: LTC Robert W. Basso, CDR, OIG, HQ, NYG, CSTS


D)  18 MARCH 2019 Plaintiff's "Follow-up to Annex onto *my* 06 MARCH 2019…    *JJa*
            Complaint"
        THRU: LTC Robert W. Basso, CDR, OIG, HQ, NYG, CSTS
        Inclusive of EXHIBITS as follows, without limitation to the below:

1- 16 MARCH 2015 "New York Guard member receives [Medal of] valor medal"
            To wit: COL Martin Ingram

2-04 OCTOBER 2007 The RIVERDALE PRESS / "Local man rescues fallen teen"
            To wit: Emma Risler collapsed (of Latham, NY / Albany region)
            on Cross-Country Race course, Van Cortlandt Park, Bronx, NY

3- 28 JULY 2009  Drafted Citation for NYS MOV reads, in part:
        "MEDAL OF VALOR is presented to MAJ MAJ JORAM J. ARIS, JA…        "
        "who distinguished himself by conspicuous gallantry and courage at the risk"
        "of life, above and beyond the call of duty…During the period 28 July 2009…"

        Re: Burning, smoking, on fire vehicle with Driver trapped & latched inside,
        with Driver's door wedged shut against tree on Sprain Brook Parkway, Yonkers, NY
                Request for NYS Medal of Valor
                To     : MAJ. Joram J. Aris
                From  : MG Fergal I. Foley, CDR, NYG
        "Without concern for his own safety, MAJ Aris saved the life of a man"
        "trapped in a burning vehicle where the electric door locks and windows failed."

4- 31 JULY 2011 Recommendation for NYS Medal For Valor
        "…MAJ ARIS observed that an SUV rolled over multiple times on the Long Island "
        "Expressway, ejecting four persons onto the Long Island Expressway and trapping    "
        "one person in the SUV, all of whom suffered serious injuries and copious bleeding.   "
        "MAJ ARIS disregarded his own safety caused by the passage of many high speed.   "
        "automobiles and heavy trucks in the accident area and unprotected exposure to blood
        "and bodily fluids…After MAJ ARIS called 911, he freed the trapped individual from    "
        "the SUV and then redirected traffic away from the bleeding prone victims and debris"
        "strewn about three-lane field of wreckage."

        "The courageous, heroic, humane and exceptional services performed by MAJ ARIS"
        "…were in keeping with the highest traditions of the military service and reflected      "
        "great credit upon himself, the New York Guard and the State of New York."

                            II

                            My file: EEOC.page

## V.      ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒   Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?   5/28/2021 & 11/03/2021 & 12/03/2021

    ☐   No

Have you received a Notice of Right to Sue from the EEOC?

    ☒   Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?   April 04, 2022   4-4-2022 *ffa*

        When did you receive the Notice?   LIKELY AFTER APRIL 4, 2022

*ffa*   US EEOC
☐ US EEOC "NOTICE OF RIGHT TO SUE" - ANNEXED
US DOJ  /"CIVIL RIGHTS DIV" LETTER - ANNEXED

## VI.     RELIEF

The relief I want the court to order is (check only those that apply):

    ☐   direct the defendant to hire me

    ☐   direct the defendant to re-employ me

    ☒   direct the defendant to promote me

    ☐   direct the defendant to reasonably accommodate my religion

    ☐   direct the defendant to reasonably accommodate my disability

    ☒   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

[x] direct the defendants to review the submitted two (2) Recommendations for Awarding the NYS MEDAL OF VALOR to Pltf plus at least one (1) additional Medal - in all three (3) instances for SAVING A LIVES (2 incidents from burning/flaming car and overturned Ford Explorer; 1 incident for saving a non-breathing, blue, collapsed X-Country runner and phoning 911/Ambulance & NYS Parks Ranges. That female H.S. student was a resident, at that time, in Latham, NY. Also, for

SEE ALSO   VI.   RELIEFS      "Wherefore..." CLAUSES "A" - "H"
ON   PAGES   20 - 21
ANNEXED TO THIS COMPLAINT & MADE PART HEREOF

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   Mr. Joram J. Aris
      3671 Hudson Manor Terrace Apt. # 17J
      RIVERDALE, NY 10463

From:   New York District Office
        33 Whitehall St, 5th Floor
        New York, NY 10004

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2021-02440 | Loresa Lockett, Investigator | 929-506-5287 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

~~**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination**~~
**Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has
been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u>
of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under
state law may be different.)

　　Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180
　　days from the filing date.

　　The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA):* You may sue under the ADEA at any time from 60 days after the charge was filed until 90
days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your
lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** *of your receipt of this Notice.*  Otherwise, your right to
sue based on the above-numbered charge will be lost.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought
in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for
any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Judy Keenan
04/04/2022

Enclosures(s)

**Judy Keenan
District Director**

cc:   David Ryan
      NEW YORK GUARD
      david.ryan@newyorkguard.us

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

150 M Street, N.E.
Karen Ferguson , EMP, 4CON, Room 9.514
Washington, DC 20530

April 04, 2022

Mr. Joram J. Aris
3671 Hudson Manor Terrace
Apt. 17J
Riverdale, NY  10463

Re:  EEOC Charge Against New York Guard
No. 520202103440

Dear Mr. Aris:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by    /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section